**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | |
|---|---|
| **THE WASHINGTON STAR COMPANY, LLC,** ) | |
| ) | |
| **Serve:** ) | |
| ) | |
| **Werther & Mills, LLC,** ) | |
| **2121 Eisenhower Ave., Ste. 608** ) | |
| **Alexandria, VA  22314** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civ. No.:**  1:26-cv-01458 |
| ) | |
| **NOTUS Media, LLC, d/b/a** ) | |
| **NEWS OF THE UNITED STATES and** ) | **JURY TRIAL DEMAND** |
| **"NOTUS",** ) | |
| ) | |
| **Serve:** ) | |
| ) | |
| **Corporation Service Company** ) | |
| **251 Little Falls Drive** ) | |
| **Wilmington, DE  19808** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**COMPLAINT
FOR TRADEMARK INFRINGEMENT,
UNFAIR COMPETITION, AND INJUNCTIVE RELIEF**

Plaintiff, The Washington Star Company, LLC ("Plaintiff" or "The Washington Star Company"), by and through its undersigned counsel, files this Complaint against Defendant, NOTUS Media, LLC, d/b/a News of the United States and NOTUS ("NOTUS"), and alleges as follows:

## NATURE OF THE ACTION

1.    This is an action for federal trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and related claims arising under the common law of the Commonwealth of Virginia.

2.    Plaintiff is the owner of the federally registered trademark THE WASHINGTON STAR, U.S. Registration No. 7,580,365 (the "Mark"), which has been in continuous use in connection with news, information, and commentary services since at least 2023.

3.    Defendant has announced plans to rebrand the publication known as NOTUS under the name "The Star," which is a name that is confusingly similar to Plaintiff's Mark.

4.    Defendant intends to use this infringing mark in connection with the same news and information services covered by Plaintiff's registration and in the same geographic market, despite having actual knowledge of Plaintiff's prior rights in the Mark.

5.    Plaintiff seeks preliminary and permanent injunctive relief to prevent Defendant from using "The Star" or any confusingly similar mark, as well as damages, treble damages, attorneys' fees, and all other relief to which Plaintiff is entitled under the Lanham Act and other applicable law.

## PARTIES

6.    Plaintiff, The Washington Star Company, LLC, is a Delaware limited liability company that owns the trademark THE WASHINGTON STAR and operates websites and media properties under that name, including wash-star.com and twstar.com.

7.      Plaintiff is the successor in interest to a business that owned and operated using THE WASHINGTON STAR Mark, including the digital publication of news and commentary on politics and current events and the development of a related print newspaper offering.

8.      Defendant, NOTUS Media, LLC, is a news organization, incorporated in Delaware, with its principal office located in Arlington, Virginia.

9.      Defendant operates in interstate commerce under the name NOTUS and/or News of the United States, including through websites, digital publications, email communications, social media, marketing materials, advertising, subscriptions, sponsorships, or other channels directed to readers and consumers in Virginia, the Washington, D.C. metropolitan area, and throughout the United States.

## JURISDICTION AND VENUE

10.      This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1338(a), as this action arises under the Trademark Act of 1946 (the Lanham Act), 15 U.S.C. § 1051 *et seq.*  This Court also has jurisdiction under 15 U.S.C. § 1121 because this action arises under the Lanham Act, and under 28 U.S.C. § 1338(a) because this action arises under an Act of Congress relating to trademarks.

11.      This Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367, as those claims are so related to the federal claims that they form part of the same case or controversy.

12.      This Court has personal jurisdiction over Defendant.  Defendant's principal place of business is located in Arlington, Virginia.  Defendant has engaged in, directed, or authorized the alleged infringing activities at issue in this case from Arlington, Virginia.

13.     Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), because a substantial part of the events giving rise to the claims occurred in this District, and because Defendant maintains offices within this District.

14.     Venue is proper in the Alexandria Division of this Court because Defendants maintain offices in Arlington, Virginia, which is within the Alexandria Division.

## FACTUAL ALLEGATIONS

### Plaintiff's Trademark Rights

15.     The Washington Star Company, LLC is the owner, via an assignment, of the Mark THE WASHINGTON STAR, which is registered on the Principal Register of the United States Patent and Trademark Office ("USPTO").

16.     The Mark is a distinctive source identifier for news, commentary, publishing, media, and related services.

17.     The Mark was filed by Calev LLC on August 11, 2021, under U.S. Serial No. 90/877,766, and was registered on November 26, 2024, under U.S. Registration No. 7,580,365, in International Class 35.

18.     On or about May 20, 2026, Calev LLC assigned to Plaintiff all right, title, and interest in and to the registered Mark, together with the goodwill of the business symbolized by and associated with the Mark, common-law rights, and rights to sue for and recover for past, present, and future infringement.  A short-form notice of assignment was filed with the USPTO on May 21, 2026.

19.     On or about May 20, 2026, Dovid Efune, who owns Calev LLC and is also the Publisher and Chairman of the *New York Sun*, assigned to Plaintiff related assets associated with the publication and brand known as "The Washington Star," including domain names,

4

publication assets, social media accounts, email accounts, subscriber lists, content, brand assets, common-law trademark and trade-name rights, and associated goodwill.

20.    THE WASHINGTON STAR Mark identifies Plaintiff and Plaintiff's services and distinguishes them from the goods and services of others.

21.    The Mark is registered for the following goods and services:

Providing information and news in the field of business, namely, information and news on current events and on economic, legislative, and regulatory developments as it relates to and can impact businesses; Providing information, news and commentary in the field of business; Providing information, news, and commentary in the field of politics; Providing an internet website featuring news and information in the field of national and international politics.

22.    The Mark has been in continuous use since at least 2023 in connection with the provision of news, information, and commentary through internet news aggregation websites, including wash-star.com and, more recently, twstar.com (which is a traditional news website with original content).  An example of Plaintiff's use of the Mark appears at https://www.twstar.com/about (last accessed May 27, 2026).



23.    The registration of the Mark on the Principal Register constitutes *prima facie* evidence of the validity of the Mark, the registrant's ownership of the Mark, and the registrant's

exclusive right to use the Mark in commerce on or in connection with the goods and services specified in the registration. 15 U.S.C. § 1115(a).

### Defendant's Knowledge of Plaintiff's Rights

24.     In March and April 2026, representatives of Defendant attempted to purchase the Mark, but the parties were unable to reach an agreement.

25.     During those discussions, Defendant represented that it was planning to relaunch its NOTUS publication under a new name and stated that it would use a different name if THE WASHINGTON STAR was not available.

26.     Thus, Defendant had actual knowledge of Plaintiff's rights in the Mark no later than early March 2026 (if not much earlier), and acknowledged Plaintiff's superior rights by attempting to acquire them.

### Defendant's Infringing Conduct

27.     Defendant targets the same or overlapping consumers, readers, advertisers, sponsors, political-news audiences, media partners, and business partners as Plaintiff.

28.     Despite its actual knowledge of Plaintiff's rights, Defendant has publicly announced its intention to rebrand NOTUS as "The Star." An image from Defendant's NOTUS website appears below:

6



NOTUS – Star promo

www.notus.org (last accessed May 27, 2026).

29.    On April 16, 2026, *The New York Times* published an article reporting that NOTUS would be renamed "The Star" and would "relaunch in the first week of June." **Exhibit 1**.  The headline from the article appears below:

## Politics News Site NOTUS to Become 'The Star'

The Washington publication is rebranding as it expands its local news and sports coverage in the wake of substantial layoffs at The Washington Post.

30.    On April 23, 2026, *The Wall Street Journal* also reported that NOTUS intends to rebrand as "The Star," in an article entitled "The Billionaire Trying to Build the 'Next Great Washington Newsroom.'"  **Exhibit 2**.  The top of that article appears below:



BUSINESS • MEDIA

## The Billionaire Trying to Build the 'Next Great Washington Newsroom'

Robert Allbritton, a co-founder of Politico, is betting big on the Star

Robert Allbritton is expanding his news startup with a flurry of hires.

By Alexandra Bruell ⟨ Follow ⟩ | Photography by Greg Kahn for WSJ

April 23, 2026 10:20 am ET

31.     NOTUS's rebrand is specifically focused on the Washington, D.C., market. NOTUS recently posted the following on X (formerly Twitter) under the handle, "The Star Metro":



https://x.com/thestarmetro/status/2057833362169987412 (last accessed May 26, 2026).

[INTENIONALLY BLANK]

32. NOTUS has recently hired a large number of former *Washington Post* reporters to staff its news operation:



https://x.com/thestarmetro/status/2057923358981792247 (last accessed May 26, 2026).

33. Robert Allbritton is the Publisher of NOTUS.

34. The Allbritton family is closely connected with the now-defunct *Washington Star* newspaper.[1] Joseph Allbritton, Robert Allbritton's father, owned the newspaper for several years during the 1970s.

---

[1] *The Washington Star*, which was previously known as the *Washington Star-News* and the *Washington Evening Star*, was a daily afternoon newspaper published in Washington, D.C., between 1852 and 1981. The paper was renamed several times before becoming the *Washington Star* by the late 1970s. The *Washington Star* provided a home to columnists such as Mary McGrory and Edwin Yoder and book critic Jonathan Yardley. On August 7, 1981, after 128 years, the *Washington Star* ceased publication and filed for bankruptcy. https://en.wikipedia.org/wiki/The_Washington_Star (last accessed May 20, 2026). Robert Allbritton's father, Joseph L. Albritton, owned the *Washington Star* for a period in the 1970's. Joseph Allbritton also owned Riggs Bank and WJLA-TV (Channel 7). https://en.wikipedia.org/wiki/Joe_Allbritton (last accessed May 20, 2026).

35. The Allbritton family's close connection with the former *Washington Star* makes NOTUS's adoption of "The Star" for a Washington-area news operation all the more likely to cause confusion with Plaintiff's Mark.

36. The *Wall Street Journal* article published April 23, 2026, reported that "The Washington Star trademark is currently owned by New York Sun publisher Dovid Efune." The article reported that "Allbritton said he considered pursuing the [Washington Star] name but ultimately went with the Star to reflect broader coverage."

37. The May 26, 2026 article in the Columbia Journalism Review accurately recounts that Plaintiff owns THE WASHINGTON STAR Mark, and that "The Star" name is a "slight misdirection" that is nonetheless "an homage" to the former *The Washington Star* newspaper:

> The result of that decision is a rebranding of NOTUS as *The Star*, which aims to fill some of the void left by the *Post*'s retreat with features on local news—the city's mayoral race, sports, and cultural stories—anchored by political coverage bearing a distinct inside-the-Beltway sensibility. The new name is an homage to an old *Post* rival, the *Washington Star*, once owned by Allbritton's father, Joe. When he announced the initial *Post* hires, Allbritton said, he was inundated by messages from nostalgic former *Washington Star* readers hoping he'd take back the title; the paper shut down in 1981. The name of this latest Allbritton venture is a slight misdirection, however: the trademark is owned by Dovid Efune, the owner of the *New York Sun*. Besides, Allbritton said, replicating the original would be too "backward looking."

**Exhibit 3**.

38. Plaintiff has not authorized, licensed, approved, sponsored, or endorsed Defendant's use of any designation likely to be confused with Plaintiff's THE WASHINGTON STAR Mark.

39.     Defendant's unauthorized conduct has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff, including loss of control over Plaintiff's reputation and goodwill, diversion of attention and business opportunities, and consumer confusion.

**Substantial Likelihood of Confusion**

40.     Defendant's planned use of "The Star" as a trademark and trade name for a news publication based in the Washington, D.C., area is confusingly similar to Plaintiff's registered Mark, THE WASHINGTON STAR, and is, on its face, likely to cause confusion, mistake, or deception among consumers.

41.     The following factors, among many others, demonstrate a likelihood of confusion:

a.     The marks are highly similar in sight, sound, and meaning.  "The Star" is the dominant and distinctive element of Plaintiff's Mark, THE WASHINGTON STAR.  "Washington" is geographically descriptive and thus less distinctive than "Star," meaning that the core, source-identifying component of both marks is identical.

b.     The goods and services offered under the respective marks are identical or closely related.  Both Plaintiff and Defendant provide news, information, and commentary on business, politics, and current events through internet websites and digital media.

c.     The trade channels are the same.  Both parties operate in the digital news and media space, targeting readers interested in Washington, D.C., politics and national affairs.

42.     Defendant had actual knowledge of Plaintiff's Mark and deliberately chose "The Star," despite knowing that the Mark was not available for purchase.

**Actual Confusion**

43.    There has already been actual confusion in the marketplace.

44.    The widely reported NOTUS rebranding effort has drawn substantial social media attention.

45.    Below is the first page of an article appearing in Media Nation, headlined "The Washington Star is back." **Exhibit 4**.



46.    Another online industry publication, The Daily Cartoonist, also reported that the former *The Washington Star* newspaper "is being reborn" as "The Star." **Exhibit 5**.

[INTENTIONALLY BLANK]

13

47.    Several prominent journalists and public personalities have also characterized NOTUS's announced rebranding as the "resurrection" of former *The Washington Star* newspaper.  **Exhibit 6**.  At least one noted that "[a]round the DC area, the paper was known as The Star":



https://x.com/AnnapCreative/status/2045151805537948090 (last accessed May 27, 2026).

48.    Other members of the public have also expressed confusion or mistakenly stated that NOTUS's rebrand will be named "The Washington Star" after the now-defunct newspaper. **Exhibit 7**.  Two such examples appear below:



https://x.com/WrestlingMarty/status/2058387685325021453 (last accessed May 27, 2026);

14



> **Jerry Senear**
> April 26 · 🌐
>
> Robert Allbritton, one of the good billionaires, is hiring people from the Washington Post, and he's going to try and give us a newspaper in the United States like in the old days: One that is factual and tells the truth.  He has named it 'The Washington Star after his Dad's old paper, which he founded.

https://www.facebook.com/jsenear/posts/pfbid0ohkJZhs4j8kHrJTsJNA3hqCgcXuxqZ9Wdvx4vqFmK5q86YbgjjLMDeArH3SCpqChl (last accessed May 27, 2026).

### Cease-and-Desist Demand

49.     On May 21, 2026, Plaintiff's counsel sent a written cease-and-desist demand to Defendant demanding that NOTUS cease all plans to rebrand as "The Star" or under any other confusingly similar name or mark.  **Exhibit 8**.

50.     The cease-and-desist letter provided Defendant with three business days from receipt to confirm in writing that it would not rebrand under "The Star" or any confusingly similar mark.

51.     Defendant has failed to comply with Plaintiff's demand.  Upon information and belief, Defendant continues to pursue its plans to rebrand as "The Star."

### COUNT I — FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

52.     Plaintiff incorporates by reference the allegations set forth in ¶¶ 1 through 51 as if fully set forth herein.

53.     Plaintiff is the owner of the federally registered Mark, THE WASHINGTON STAR, U.S. Registration No. 7,580,365, which is valid and subsisting.

54.     Defendant's use and intended use of "The Star" in connection with news, information, and commentary services constitutes the use in commerce of a reproduction, counterfeit, copy, or colorable imitation of Plaintiff's registered Mark in connection with the sale,

offering for sale, distribution, or advertising of goods and services for which the Mark is registered.

55.    Defendant's use and intended use of "The Star" is likely to cause confusion, cause mistake, or deceive consumers as to the source, origin, sponsorship, or affiliation of Defendant's publication and services.

56.    Defendant's use and intended use of "The Star" has caused actual confusion, caused actual mistake, and actually deceived consumers as to the source, origin, sponsorship, or affiliation of Defendants' publication and services.

57.    Defendant's acts constitute trademark infringement in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

58.    Defendant's infringement has been willful, deliberate, and in bad faith, as Defendant had actual knowledge of Plaintiff's rights in the Mark, attempted to purchase the Mark, was told it was not available, and proceeded to adopt a confusingly similar mark despite that knowledge.

59.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, unless Defendant is enjoined by this Court.

60.    Plaintiff is entitled to injunctive relief, actual damages, Defendant's profits attributable to the infringement, treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

### COUNT II — FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

61.    Plaintiff incorporates by reference the allegations set forth in ¶¶ 1 through 60 as if fully set forth herein.

62.    Defendant's use and intended use of "The Star" in connection with news, information, and commentary services constitutes the use in commerce of a word, term, name, symbol, or device, or any combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services, or commercial activities by Plaintiff.

63.    Defendant's conduct violates § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

64.    Defendant's acts have been willful, deliberate, and undertaken in bad faith and with full knowledge of Plaintiff's prior rights in the Mark.

65.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law, unless Defendant is enjoined by this Court.

66.    Plaintiff is entitled to injunctive relief, actual damages, Defendant's profits, treble damages, attorneys' fees, and costs pursuant to 15 U.S.C. §§ 1116, 1117, and 1125(a).

### COUNT III — COMMON-LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION

67.    Plaintiff incorporates by reference the allegations set forth in ¶¶ 1 through 66 as if fully set forth herein.

68.    Plaintiff has established common-law rights in the Mark through continuous use since at least 2023 in connection with the provision of news, information, and commentary services.

69.    Defendant's use and intended use of "The Star" constitutes common-law trademark infringement and unfair competition under the laws of the Commonwealth of Virginia

because Defendants are using and intend to use a mark confusingly similar to Plaintiff's Mark in a manner likely to cause confusion, mistake, or deception among consumers as to the source, origin, sponsorship, or affiliation of Defendant's publication and services.

70.     Defendant's conduct has been willful, deliberate, and in bad faith.

71.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer irreparable harm, unless Defendant is enjoined by this Court.

72.     Plaintiff is entitled to injunctive relief, compensatory damages, and all other relief available under applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, The Washington Star Company LLC, respectfully requests that this Court enter judgment in its favor and against Defendant and grant the following relief:

A.     A temporary restraining order and preliminary and permanent injunction enjoining Defendant, and its officers, agents, servants, employees, attorneys, successors, assigns, and all persons acting in concert or participation with them, from:

(i)     Using "The Star" or any other mark confusingly similar to THE WASHINGTON STAR, including but not limited to "The Star Metro," in connection with news, information, commentary, or any related goods or services;

(ii)     Using any trademark, trade name, service mark, domain name, or other source identifier that is confusingly similar to Plaintiff's Mark;

(iii)     Engaging in any other activity constituting trademark infringement or unfair competition with respect to Plaintiff's Mark;

B.     An award of Plaintiff's actual damages caused by Defendant's infringement, including but not limited to any quantifiable losses of goodwill;

18

C.  An award of Defendant's profits attributable to the infringement pursuant to 15 U.S.C. § 1117(a);

D.  An award of treble damages pursuant to 15 U.S.C. § 1117(a) and (b), or punitive damages under Virginia common law, given the willful nature of Defendant's infringement;

E.  An award of Plaintiff's reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a), this being an exceptional case;

F.  An order requiring Defendants to deliver up for destruction all materials bearing the infringing mark, including but not limited to signage, marketing materials, business cards, letterhead, and digital assets;

G.  An order requiring Defendants to file with this Court and serve upon Plaintiff within thirty (30) days after the issuance of an injunction a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

H.  Pre-judgment and post-judgment interest; and

I.  Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  May 28, 2026                                    Respectfully submitted,


By:  _/s/Laurin H. Mills_
Laurin H. Mills (VSB No. 79848)
Brian Donnelly (VSB No. 82052)
WERTHER & MILLS, LLC
2121 Eisenhower Avenue, Suite 608
Alexandria, Virginia 22314
Telephone: (703) 547-4693
Facsimile: (240) 912-3031
laurin@werthermills.com
brian@werthermills.com

*Counsel for Plaintiff*

19