**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| THE WASHINGTON STAR COMPANY LLC,<br><br>        Plaintiff,<br><br>v.<br><br>NOTUS MEDIA, LLC, d/b/a NEWS OF THE UNITED STATES and "NOTUS",<br><br>        Defendants. | CASE NO. 1:26-cv-01458 RDA (LRV) |

**DEFENDANT NOTUS MEDIA, LLC'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO INCREASE BOND AMOUNT**

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    PROCEDURAL BACKGROUND ............................................................................ 1

III.   LEGAL STANDARD .............................................................................................. 3

IV.   THE BOND AMOUNT SHOULD BE INCREASED TO AT LEAST $2.5
MILLION ................................................................................................................ 4

       A.    Reevaluation of the Bond Is Appropriate ................................................. 4

       B.    NOTUS's Losses Caused by Compliance with the TRO Order Are Greater
Than $2.5 Million .................................................................................... 5

V.    CONCLUSION ........................................................................................................ 8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Supply Corp. v. Hosp. Prods., Ltd.*,
 780 F.2d 589 (7th Cir. 1986) ....................................................................................................6

*Auto Driveaway Fran. Sys., LLC v. Auto Driveaway Richmond, LLC*,
 928 F.3d 670 (7th Cir. 2019) ....................................................................................................4

*Bebe Stores, Inc. v. May Dep't Stores Int'l, Inc.*,
 230 F. Supp. 2d 980 (E.D. Mo. 2002)......................................................................................5

*Dass v. Tosco Corp.*,
 136 Fed. Appx. 21 (9th Cir. Apr. 25, 2005)...........................................................................4

*Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*,
 No. 5:15-CV-00058, 2016 WL 1247220 (W.D. Va. Mar. 24, 2016) ...............................3, 5, 8

*Equitable Nat'l Life Ins. Co., Inc. v. AXA Equitable Life Ins. Co.*,
 434 F. Supp. 3d 1227 (D. Utah 2020)......................................................................................5

*Fleet Feet, Inc. v. Nike Inc.*,
 419 F. Supp. 3d 919 (M.D.N.C. 2019) .....................................................................................5

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
 174 F.3d 411 (4th Cir. 1999) ....................................................................................................3

*Jenkinson v. Highmark W. Va., Inc.*,
 No. 3:19-cv-83, 2019 WL 2341668 (N.D. W. Va. June 3, 2019)..........................................4

*Lab'y Corp. of Am. Holdings v. Kearns*,
 84 F. Supp. 3d 447 (M.D.N.C. 2015) ..............................................................................3, 4, 8

*Mead Johnson & Co. v. Abbott Lab'ys*,
 201 F.3d 883 (7th Cir. 2000) .................................................................................................3, 4

*Pfizer, Inc. v. Teva Pharms., USA, Inc.*,
 429 F.3d 1364 (Fed. Cir. 2005)................................................................................................6

*Rauch Indus., Inc. v. Radko*,
 No. 3:07-cv-197C, 2007 WL 3124647 (W.D.N.C. Oct. 25, 2007)..........................................3

*Sara Lee Corp. v. Kayser-Roth Corp.*,
 No. 6:92CV00460, 1992 WL 436279 (M.D.N.C. Dec. 1, 1992)..............................................5

*Snap-On Tools Co. v. C/Net, Inc.*,
No. 97C5803, 1997 WL 33483145 (N.D. Ill. Oct. 3, 1997) .................................................5, 8

*Tinnus Ents., LLC v. Telebrands Corp.*,
No. 6:17-CV-00170-RWS, 2018 WL 3455543 (E.D. Tex. July 16, 2018) ..............................6

*Vessel Med., Inc. v. Elliott*,
No. 6:15-cv-00330-MGL, 2015 WL 5437173 (D.S.C. Sept. 15, 2015) ...................................4

**Rules**

Fed. R. Civ. P. 65 ...............................................................................................................................3, 5

## I.      INTRODUCTION

Defendant NOTUS Media, LLC ("NOTUS") requests an increase in the bond amount issued in conjunction with the Court's June 2, 2026 Order issuing a temporary restraining order against NOTUS's use of THE STAR.  Dkt. 30 ("TRO Order" or "TRO Ord.").  The bond should be increased because the current $100,000 amount is woefully insufficient to cover NOTUS's actual costs and harm incurred directly from the TRO Order.  Rather, NOTUS's losses between the TRO Order and the currently scheduled July 22, 2026 hearing on The Washington Star Company, LLC's ("Plaintiff") motion for preliminary injunction are at least $2.5 million.  Such amount includes advertising that NOTUS had already paid for before Plaintiff belatedly complained about NOTUS's use of THE STAR, and which cannot now be run given the TRO Order.  It also includes revenue that NOTUS was scheduled to receive from sponsors in connection with its rebrand to THE STAR, which was committed before Plaintiff complained, and which as a result of the TRO Order NOTUS will now not receive.  These amounts—totaling nearly $2.5 million—are specific and cannot be recovered due to the TRO.[1]  NOTUS also is already suffering irreparable reputational harm given its cessation of use of THE STAR, which has left NOTUS without a new brand to reflect its expanded news services.  As a result, the bond should be increased to an amount of at least $2.5 million so that it can adequately cover NOTUS's costs and harm.  Any lesser amount is insufficient as NOTUS would be left without adequate relief.

## II.      PROCEDURAL BACKGROUND

NOTUS is a national news publication with an independent newsroom and full-time journalists who investigate and deliver original, groundbreaking news.  Def. Mem. of Law in

---

[1]   This Motion addresses only the bond amount related to the TRO Order.  A preliminary injunction would require an additional bond, which NOTUS will separately address in its supplemental briefing related to the motion for preliminary injunction.

Opposition to Mot. for TRO and PI, Dkt. 18 ("TRO Opp.") at 3.  Its readers are located across the country, including in Washington, D.C., Virginia, Texas, California, Michigan, and New York.  TRO Opp. at 3.  On April 16, 2026, NOTUS's rebrand to THE STAR publicly launched on its website and in the national press.  *Id.* at 3-4.  Between April 16 and May 28, NOTUS's new name was widely promoted (both by NOTUS and third-party media).  *Id.* at 4-5.  Among other things, NOTUS's branding for THE STAR was seen by more than 600,000 unique visitors to NOTUS's website and received more than 17.45 million media impressions.  *Id.*

Plaintiff admits that it became aware of NOTUS's rebrand and use of THE STAR on April 16, 2026.  Pl. Ex. A to Mem. of Law in Support of Mot. for TRO and PI, Dkt.7-1 ("Efune Decl.") ¶¶28-29; Pl. Mem. of Law in Support of Mot. for TRO and PI, Dkt. 8 ("TRO Motion" or "TRO Mot.") at 14 n.4.  Yet Plaintiff did nothing to reach out to or complain to NOTUS until five weeks later, on May 21, 2026, when it sent a cease-and-desist letter through counsel.  TRO Mot. at 11.  Counsel for NOTUS responded to the cease-and-desist letter within the requested three business days, stating that it expected to provide a substantive response later that week.  *Id*.  The next day, on May 28, 2026, with no prior notice to NOTUS, Plaintiff sued, and thereafter filed its Application for Temporary Restraining Order and Motion for Preliminary Injunction.  *Id*.

NOTUS filed its Opposition to Plaintiff's TRO Motion on June 1, 2026, and the Court heard oral argument on June 2, 2026.  TRO Ord. at 1; *see generally* TRO Opp.  NOTUS's Opposition detailed the harm that it would suffer were a TRO or PI ordered, including $1.2 million in lost revenue, and $1.3 million in pre-paid advertisements.  TRO Opp. at 27; *see also* Decl. of Arielle Elliott, Dkt. 18-1 ¶¶39, 43.

Following the hearing, the Court granted Plaintiff's motion for a TRO, and scheduled additional briefing and a hearing regarding Plaintiff's motion for a preliminary injunction for July

22, 2026.  TRO Ord. at 9-11.  The TRO Order, in part, enjoined NOTUS from using THE STAR, including further advertising the rebrand.  *Id*.  In addition, the Court ordered that Plaintiff post a bond of $100,000 to cover the period that the TRO would be in effect, noting that the parties had not addressed the amount of the bond.  TRO Ord. at 9-10.

### III.     LEGAL STANDARD

When a TRO is granted, Federal Rule of Civil Procedure 65(c) requires that "the movant give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "The purpose of the bond is to provide security for any damages resulting from an improvidently granted injunction."  *Dynamic Aviation Grp. Inc. v. Dynamic Int'l Airways, LLC*, No. 5:15-CV-00058, 2016 WL 1247220, at *31 (W.D. Va. Mar. 24, 2016) (quoting *Rauch Indus., Inc. v. Radko*, No. 3:07-cv-197C, 2007 WL 3124647, at *8 (W.D.N.C. Oct. 25, 2007)).  Therefore, the Fourth Circuit has held that "[t]he Judge usually will fix security in an amount that covers the potential incidental and consequential costs as well as either the losses the unjustly enjoined or restrained party will suffer during the period he is prohibited from engaging in certain activities or the complainant's unjust enrichment caused by his adversary being improperly enjoined or restrained."  *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 n.3 (4th Cir. 1999).

The amount of the bond is important—"an understated bond could cause irreparable harm" to the enjoined because "'the damages for an erroneous preliminary injunction cannot exceed the amount of the bond.'"  *Dynamic Aviation*, 2016 WL 1247220, at *31 (quoting *Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 466 (M.D.N.C. 2015)); *accord Mead Johnson & Co. v. Abbott Lab'ys*, 201 F.3d 883, 888 (7th Cir. 2000)).  On the other hand, "[a]n error in setting the bond too high…is not serious" as it does not entitle the defendant to that amount if the TRO was

3

improperly entered.  *Mead Johnson*, 201 F.3d at 888.

Thus, "[w]hen setting the amount of security, ***district courts should err on the high side***" as the consequences of an inadequate bond are far greater than the consequences of a bond that is too high.  *Mead Johnson*, 201 F.3d at 888 (finding district court erred in setting bond at $1 million, which would not cover defendant's potential losses) (emphasis added).  The consequences of a bond that is too low are particularly severe where the injunction is national in scope.  *See Auto Driveaway Fran. Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 679 (7th Cir. 2019) (remanding decision because district court set a too-low bond where "[i]n contrast to the inexplicably low bond amount, the injunction itself is a sweeping one," because "scope of the injunction is directly related to the amount of the security required").

## IV.    THE BOND AMOUNT SHOULD BE INCREASED TO AT LEAST $2.5 MILLION

### A. Reevaluation of the Bond Is Appropriate

Courts within the Fourth Circuit have recognized that, if the parties did not present arguments on an appropriate bond amount, reevaluation of the bond amount set by the Court is warranted.  *See, e.g.*, *Vessel Med., Inc. v. Elliott*, No. 6:15-cv-00330-MGL, 2015 WL 5437173, at *11 (D.S.C. Sept. 15, 2015) (stating that "[i]f necessary, Defendant [] can seek an increase of the amount of bond on a proper showing" where parties had not presented arguments on the bond amount); *Kearns*, 84 F. Supp. 3d at 447 ("should either party conclude that a different figure would be proper, it may move for adjustment of the bond amount while the preliminary injunction is still in effect"); *Jenkinson v. Highmark W. Va., Inc.*, No. 3:19-cv-83, 2019 WL 2341668, at *8 (N.D. W. Va. June 3, 2019) (granting "leave to file additional evidence with the Court regarding the proper bond amount" where issue had not been argued); *see also Dass v. Tosco Corp.*, 136 Fed. Appx. 21, 24 (9th Cir. Apr. 25, 2005) (affirming increase of bond amount where modification was

4

based on reasonable estimate of defendant's potential damages from injunction).

Here, the TRO Order states that "[t]he parties have not addressed in what amount any bond should be set, should the Court grant the TRO." TRO Ord. at 9. Because, as set forth below, the bond amount is woefully insufficient to cover the losses NOTUS will suffer from a wrongful temporary restraining order, reevaluation of the bond is appropriate. *Dynamic Aviation*, 2016 WL 1247220, at *31.

## B. NOTUS's Losses Caused by Compliance with the TRO Order Are Greater Than $2.5 Million

Rule 65(c) requires that the bond cover the costs and damages sustained by a wrongfully restrained party. Fed. R. Civ. P. 65(c). In trademark infringement cases, that includes costs and damages in the form of non-recoupable advertising costs and lost revenues associated with the enjoined trademark. *See Fleet Feet, Inc. v. Nike Inc.*, 419 F. Supp. 3d 919, 949 (M.D.N.C. 2019) (recognizing need for bond to cover the "significant problems" caused by injunction to defendant Nike's advertising campaign); *Bebe Stores, Inc. v. May Dep't Stores Int'l, Inc.*, 230 F. Supp. 2d 980, 998 (E.D. Mo. 2002), *aff'd in part, remanded in part sub nom.* 313 F.3d 1056 (8th Cir. 2002) (setting bond at $3 million for costs of removing advertising related to enjoined mark, despite allowing plaintiff "to sell the [products] it has on hand"); *Equitable Nat'l Life Ins. Co., Inc. v. AXA Equitable Life Ins. Co.*, 434 F. Supp. 3d 1227, 1255–56 (D. Utah 2020) (imposing $10 million bond "to compensate [defendant] if found to be wrongly enjoined" based in part on "the costs of [defendant's] pre-paid media buys"); *Snap-On Tools Co. v. C/Net, Inc.*, No. 97C5803, 1997 WL 33483145, at *12 (N.D. Ill. Oct. 3, 1997) (setting bond of $150 million to account for "the potential harm [defendant] would face if the launch [of its product] were delayed"); *Sara Lee Corp. v. Kayser-Roth Corp.*, No. 6:92CV00460, 1992 WL 436279, at *1 (M.D.N.C. Dec. 1, 1992)

(awarding bond of $1 million in trade dress infringement case).[2]

Here, the Court's TRO Order required NOTUS to forego its national rebrand to THE STAR. TRO Ord. at 10 n.3. Among other things, the TRO Order required NOTUS to do the following, each of which were put in place before Plaintiff complained about NOTUS's rebrand to The Star on May 21, 2026:

- Cancel the launch of its new website, the-star.com;

- Cancel the rebrand of its expanded news publication (which includes expanded coverage into topics such as healthcare, energy, the environment, national defense, and diplomacy) under the name THE STAR;

- Cancel all advertising of THE STAR that was already paid for, but not yet released, by June 3, 2026;

- Cancel the in-person marketing event for THE STAR on June 25, 2026, for which NOTUS had already paid non-refundable deposits; and

- Refrain from collecting revenues from sponsors who had agreed to pay to receive signage and recognition in connection with NOTUS's rebrand to THE STAR, including through ads on The Star website, in The Star newsletters, and at the planned marketing event that was scheduled for June 25, 2026.

Declaration of Arielle Elliott in Support of Mot. to Increase Bond Amount ("6/9/26 Elliott Decl.") ¶¶4-6.

In particular, NOTUS will lose the following out-of-pocket costs and revenue solely during the duration of the TRO, and before the preliminary injunction hearing, as a result of the TRO Order:

---

[2]    Courts also regularly issue bond amounts in the multi-million dollar range in cases involving other types of claims where that matches the harm defendant would suffer. *E.g.*, *Am. Hosp. Supply Corp. v. Hosp. Prods., Ltd.*, 780 F.2d 589, 612 (7th Cir. 1986) (affirming $5 million bond for injunction related to enforcement of contract); *Pfizer, Inc. v. Teva Pharms., USA, Inc.*, 429 F.3d 1364, 1372 (Fed. Cir. 2005) (setting $200 million bond for preliminary injunction in patent infringement suit); *Tinnus Ents., LLC v. Telebrands Corp.*, No. 6:17-CV-00170-RWS, 2018 WL 3455543, at *5 (E.D. Tex. July 16, 2018) (patent case imposing $4.25 million bond for preliminary injunction).

6

| Non-Refundable Advertising Costs for Cancelled Planned Ads | | |
|---|---|---|
| **Item** | **Cost** | **Description** |
| Digital Ads for Launch | $433,289 | Digital advertising for THE STAR |
| Outside of Home ("OOH") advertising | $758,343 | Bus wraps, subway ads, billboards advertising for THE STAR |
| June 25 Marketing Event Deposit | $7,500 | Deposit for event space to advertise THE STAR |
| **Lost Revenues** | | |
| **Item** | **Revenue** | **Description** |
| Sponsorships / advertising committed by third parties | $1,200,000 | Sponsorship pledges to receive signage and/or recognition in connection with THE STAR advertisements and marketing |

*Id.* These costs do not reflect the expenses that would be incurred by NOTUS if a preliminary injunction is entered, which among other things would require NOTUS to rebrand under a new name. Rather, the above reflects *only* those costs that NOTUS has incurred or will incur due to the restraint on its use of THE STAR mark from June 2, 2026 TRO Order, through the hearing on the Motion for Preliminary Injunction.

In addition to the hard dollar amounts that NOTUS has now lost given the TRO Order, NOTUS also is likely to suffer extensive reputational harm that cannot be easily quantified at this stage. *Id.* ¶7. For example, NOTUS has been forced to reverse its position from prior advertising that NOTUS is now THE STAR, and inform numerous advertisers and vendors of this last-minute change. *Id.* This has significantly damaged NOTUS's reputation already, as the implication is that NOTUS acted improperly and infringed, and also derailed NOTUS's rebranding.[3] *Id.*

---

[3]   Indeed, the litigation has received extensive media coverage, wherein Plaintiff has gone on record to paint NOTUS as a willful trademark infringer. 6/9/26 Elliott Decl. ¶7. Some of the media coverage also has falsely represented that Plaintiff is affiliated with the original *Washington Star* newspaper, which Plaintiff never owned nor acquired anything from. TRO Opp. at 22-23 (citing TRO Mot. at Ex. A-12, A-13; Efune Decl. ¶41). In fact, it is NOTUS's

NOTUS has also suffered reputational harm from press about the TRO Order, which gives the wrongful impression that NOTUS deliberately infringed upon the Plaintiff's rights. *Id.* Moreover, the momentum for NOTUS's rebranding cannot be easily recouped even if the TRO were lifted; NOTUS will have to start all over again. *Id.* There is no adequate financial compensation for NOTUS's reputational harm.

Thus, the existing $100,000 bond does not come close to covering NOTUS's harm from being wrongfully enjoined. The bond should be increased to at least $2.5 million to cover NOTUS's out-of-pocket costs and lost revenue as a result of the TRO Order, as well as its reputational harm (which is far greater than this amount). *Kearns*, 84 F. Supp. 3d at 466 n.14 ("an understated bond could cause irreparable harm"); *Dynamic Aviation*, 2016 WL 1247220, at *31 (same); *Snap-On Tools Co.*, 1997 WL 33483145, at *12 (bond reflected "the potential harm [defendant] would face if the launch [of its product] were delayed").

## V.  CONCLUSION

In light of the significant losses incurred by NOTUS in complying with this Court's TRO Order, and the irreparable harm that would befall NOTUS if it is unable to recover these costs from Plaintiff upon a finding that NOTUS was wrongfully enjoined, NOTUS respectfully asks that the bond be increased to at least $2.5 million.

---

owner's family that previously owned that publication. *Id.* at 22. Plaintiff also attempts to misuse the media coverage by claiming that reporting about the litigation reflects evidence of actual confusion, which it does not. Pl. Reply Mem. of Law in Support of Mot. for TRO and PI, Dkt. 21 at 3.

Dated: June 9, 2026

Respectfully submitted,

/s/ Robert E. Scully, Jr.

Shanti Sadtler Conway (admitted *pro hac vice*)
Abbey Elizabeth Quigley (admitted *pro hac vice*)
Maggie LaPoint (*pro hac vice* forthcoming)
Alexandra Cunningham (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Ave
New York, NY 10022
Tel: (212) 446-4800
Fax: (212) 446-4900
shanti.conway@kirkland.com
abbey.quigley@kirkland.com
maggie.lapoint@kirkland.com
alexandra.cunningham@kirkland.com

Robert E. Scully, Jr. (VSB No. 19218)
Michael K. Kim (VSB No. 82922)
BLANKINGSHIP & KEITH, PC
4020 University Drive, Suite 300
Fairfax, VA 22030
Tel: (703) 691-1235
Fax: (703) 691-3913
rscully@bklawva.com
mkim@bklawva.com

*Attorneys for Defendant NOTUS Media, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June, 2026, the foregoing document was filed through the ECF system will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

/s/ Robert E. Scully, Jr.
Robert E. Scully, Jr.