| | |
|---|---|
| THE WASHINGTON STAR COMPANY LLC, <br><br> Plaintiff, <br><br> v. <br><br> NOTUS MEDIA, LLC, d/b/a NEWS OF THE UNITED STATES and "NOTUS", <br><br> Defendants. | CASE NO. 1:26-cv-01458 |

**DECLARATION OF ARIELLE ELLIOTT IN SUPPORT OF**
**DEFENDANT'S MOTION TO INCREASE BOND AMOUNT**

I, Arielle Elliott, declare as follows:

1. I am over the age of 18 and am an employee of NOTUS Media, LLC ("NOTUS"). I have been the Chief Executive Officer ("CEO") of NOTUS since March 2025.

2. I submit this declaration in support of NOTUS's Motion to Increase Bond Amount ("Motion").

3. On June 1, 2026, I submitted a declaration in support of NOTUS's Opposition to Plaintiff's Application for Temporary Restraining Order and Motion for Preliminary Injunction. In that declaration, I discussed the significant and incalculable hardship that NOTUS would suffer if forced to cease use of THE STAR and rebrand once again. In this current declaration, I provide a more detailed breakdown of the costs and revenues lost by NOTUS as a result of its inability to use THE STAR during the temporary restraining order period—*i.e.*, from approximately June 2, 2026 to July 22, 2026.

4.	After the Court's ruling on June 2, 2026 issuing a temporary restraining order, NOTUS took a number of actions to ensure compliance with the Order. This included: (i) canceling the launch of its new website, the-star.com, (ii) canceling the rebrand of its expanded news publication (which includes expanded coverage into topics such as healthcare, energy, the environment, national defense, and diplomacy) under the name The Star; (iii) canceling all advertising of The Star that was already paid for, but not yet released, by June 3, 2026; and (iv) canceling the marketing event booked for The Star on June 25, 2026, for which NOTUS had already paid a non-refundable deposit.

5.	At a minimum, NOTUS has lost the following pre-paid advertising and event costs totaling $1,206,632, which are not refundable:

(i)	A digital ad campaign, costing $433,289, for the launch of The Star, which would advertise to consumers that The Star was live.

(ii)	Outside-of-Home ("OOH") ad campaigns costing $758,343 to advertise the launch of The Star and drive subscriptions to the new publication, which was set to advertise to consumers that The Star was live via subway ads, bus wraps, billboards, and similar outdoor advertising. Such advertising was planned for the Washington, D.C. area as well as Chicago, Los Angeles, and Atlanta.

(iii)	A non-refundable deposit on a venue for a large in-person marketing event on June 25, 2026 to advertise the launch of The Star, costing $7,500.

The above costs were committed and paid before May 21, 2026, when I understand Plaintiff sent its cease-and-desist letter to NOTUS.

6.	Prior to the Court's ruling, NOTUS also had received contractual commitments from sponsors who had agreed to pay a total of $1.2 million to receive signage and recognition in connection with NOTUS's rebrand to The Star, including through ads on The Star website, in The Star newsletters, and at the planned marketing event that was scheduled for June 25, 2026. NOTUS has not collected these revenues as a result of the temporary restraining order.

7.	Some of the losses NOTUS will incur from these actions are presently incalculable.  For example, NOTUS has been forced to reverse its position from prior advertising that NOTUS is now The Star, which includes informing numerous advertisers and vendors across the country of this last-minute change.  This has significantly damaged NOTUS's reputation already, as the implication is that NOTUS acted improperly and infringed, and also derailed NOTUS's rebranding.  NOTUS has also suffered reputational harm from press about the TRO, which gives the wrongful impression that NOTUS deliberately infringed upon the Plaintiff's rights.  No amount of money could provide compensation for that harm.  This has also negatively impacted the momentum for NOTUS's rebranding effort, which cannot be easily recouped even if the TRO were to be lifted and NOTUS was permitted to proceed with the launch of the rebrand in the future.  NOTUS will have to start all over again to rebuild momentum and the reputation of The Star.

*[Remainder of the page intentionally left blank]*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of June, 2026.

_Arielle Elliott_
Arielle Elliott